UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| JAMES HARDEN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) Cause No. 4:18-cv-00235-TWP-DML | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## RESPONSE IN OPPOSITION TO 28 U.S.C. § 2255 MOTION

The United States, by counsel, responds to James Harden's motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255.  Harden claims ineffective assistance of counsel.   (Dkt. 1.)  Harden's claims fail, and this Court should deny his motion.

## BACKGROUND[1]

### *Harden's Criminal Conduct*

James Harden was a member of a robbery crew that committed a total of 11 robberies of cell phone stores throughout the mid-west region.  Harden participated in the following four robberies:

---

[1] Throughout this brief, the government will make the following references: Dkt. = the docket in this case; Crim. Dkt. = the docket in Harden's criminal case, Cause No. 4:15-cr-25-TWP-VTW; PSR = Harden's presentence report; P. = Harden's plea hearing held on April 28, 2017; and S. = Harden's sentencing hearing held on November 28, 2017.

On July 28, 2015, a retail store located at 2901 Richmond Road in Lexington, Kentucky, was robbed by Lawrence Adkinson, James Harden, and Don Nell Redmon.  There were three victims in the store at the time of the robbery, and $41,994.99 worth of equipment was stolen.

On August 24, 2015, a retail store located at 201 North Randall in Batavia, Illinois, was robbed by Lawrence Adkinson, Justin Martin, and James Harden. There were four victims in the store at the time of the robbery, and $64,739.80 worth of equipment was stolen.

Thereafter, on September 13, 2015, a retail store located at 15615 Lagrange Road in Orland Park, Illinois, was robbed by Lawrence Adkinson, Jeffrey Kemp, James Harden, Justin Martin, and Demetrius (Domonique) Walker.  There were six victims inside the store at the time of the robbery, and the perpetrators stole $25,429.88 worth of equipment.

And, finally, on September 15, 2015, a retail store located at 1523 East San Marnan in Waterloo, Iowa, was robbed by Lawrence Adkinson, Jeffrey Kemp, James Harden, Roosevelt Brown, Don Nell Redmon, and Demetrius (Domonique) Walker. There were two victims in the store at the time of the robbery, and $25,686.00 worth of equipment was stolen.

(Crim. Dkt. 386.)

Harden was engaged in criminal activity with Kemp prior to the beginning of the armed robberies.  (*Id*.)  On Kemp's behalf, Harden committed commercial burglaries before escalating into armed robberies. (*Id*.)  Harden was a member of the conspiracy since its inception and so remained until he was arrested.  (*Id*.)

In every robbery for which he was an active participant, Harden went into the store. (*Id*.)  Harden was a gunman at the Lexington, Orland Park

2

and Batavia robberies.  (*Id.*)  In all robberies which he participated, the firearms were brandished.  (*Id.*)

### *Indictment and Representation*

On November 17, 2015, Harden was charged in an indictment with conspiracy to commit robbery (Count 1), in violation of 18 U.S.C. § 1951(a), and conspiracy to brandish a firearm in furtherance of a crime of violence (Count 2), in violation of 18 U.S.C. § 924(o).   (Crim. Dkt. 48.)

The Court appointed Larry Simon to represent him.  (Crim. Dkt. 23.) Simon regularly communicated with Harden by mail during the two-year period that he represented Harden.  (*Id.*)  Simon mailed numerous letters to Harden, and received letters from Harden as well.  (*Id.*)  Simon rarely communicated with Harden telephonically when Harden was lodged in a jail facility during the course of his criminal case.  (*Id.*, p. 2.)

### *Harden's Knowing and Voluntary Guilty Plea*

On November 10, 2016, Harden filed a petition to enter a plea of guilty and plea agreement.  (Crim. Dkt. 234.)  In his plea, under Federal Rule of Criminal Procedure 11(c)(1)(C), Harden agreed to plead guilty to both counts of the indictment.  (*Id.* ¶ 1.)  He agreed to a sentence of 120 months' imprisonment.  (*Id.* ¶ 9.)  He also agreed to $354,913.50 in restitution.  (*Id.*, ¶9.)  Harden also expressly waived his right to appeal his conviction and sentence, or to contest, or seek to modify his conviction or sentence or the

manner in which it was determined if the Court sentenced him in accordance with the plea agreement.  (*Id*. ¶¶ 22, 23.)

On that same date, the parties filed a Sealed Addendum regarding the plea agreement, wherein Harden agreed to cooperate with the government in exchange for the concessions made by the government.  (Crim. Dkt. 235.)  The addendum further provided that the government and the defendant had agreed upon a specific sentence as set forth in the plea agreement, and Harden would not receive a substantial assistance departure as provided under U.S.S.G. § 5K1.1.  (*Id*. ¶ 6.)

A change of plea hearing was held on April 28, 2017.  (Crim. Dkt. 403.)  At the hearing, Harden informed the Court that he would like to enter a plea of guilty to counts 1 and 2 of the indictment, but outside of the plea agreement.  (P., pp. 2, 3.)  Trial counsel advised the Court that he informed Harden of the ramifications of pleading guilty without the benefit of a plea agreement, and that certain protections and limitations that would be included in a written plea agreement would no longer apply.  (*Id*. p. 3.)  Trial counsel also provided Harden with different possibilities of entering a plea of guilty without the benefit of a plea agreement.  (*Id*.)

The Court informed Harden that he was allowed to withdraw his plea agreement at any time before his plea was taken, and Harden confirmed that he wanted to withdraw the plea agreement and plead guilty to counts 1 and 2

4

of the indictment.  (*Id*. p. 4.)  Trial counsel requested a short recess to confirm that Harden was knowingly withdrawing his plea agreement.  (*Id*. p. 6.)  After recess, trial counsel confirmed that Harden wanted to withdraw his previous plea of not guilty and plead open.  (*Id*. pp. 6, 7.)  The Court granted Harden's motion, and withdrew the written plea agreement and addendum.  (*Id*. p. 7.)

Harden confirmed that he had discussed the allegations contained in the indictment with his attorney.  (*Id*. p. 9.)  The Court reviewed the statutory penalties that applied to each count and explained that the Court could impose consecutive as opposed to concurrent sentences.  (*Id*. pp. 9, 10.)  Harden stated he understood.  (*Id*. p. 10.)

The Court informed Harden that he could be ordered to pay restitution to the known victims, and that there are victims of the offenses.  (*Id*.)  Harden confirmed that he understood.   (*Id*.)  The Court also advised Harden that following any prison sentence for these charges, he would be subject to supervision by a probation officer.  (*Id*. p. 9.)  Harden affirmed that he understood.  (*Id*. p.10.)  Harden affirmed that he was fully satisfied with his counsel's representation.  (*Id*. p.11.)

The Court informed Harden that by pleading guilty he was relinquishing: his right to trial by jury; the right to require the government to prove his guilty beyond a reasonable doubt; the right to cross-examine

witnesses against him; and the right to testify in his defense.  (*Id*. pp. 12-14.)

The Court advised Harden of the charges against him and reviewed the elements of each charge that the government would have to prove at trial. (*Id*. p. 15.)  The Court informed Harden that because he was pleading guilty without a plea agreement, the Court would consider the 18 U.S.C. § 3553(a) factors, as well as take in consideration the United States Sentencing Guidelines.  (*Id*. pp. 15-16.)  Harden confirmed that he understood and discussed this with his attorney.  (*Id*.)

The Court also informed Harden that he had the right to appeal the conviction and sentence imposed.  (*Id*. pp. 16, 17.)  The Court again confirmed with Harden that the government has the right to request restitution, even though Harden was not pleading guilty to a specific amount of restitution. (*Id*. p. 17.)  Harden confirmed that he understood.  (*Id*.)  The Court again advised Harden that the Court would have an opportunity to determine whether a fine should be imposed, and that the Court could sentence Harden up to a term of 20 years' imprisonment.  (*Id*.)  Harden confirmed that he understood these consequences of his plea of guilty.  (*Id*.)

The government provided the factual basis.  (*Id*. pp. 17-23; Crim. Dkt. 386.)  Harden confirmed that the factual basis was true and accurate, except that he wasn't sure if he was the one who brandished a firearm at the retail store in Batavia, Illinois.  (*Id*. p. 24.)   The United States informed the Court

6

that when Harden was interviewed, he was shown surveillance photographs from the Botavia robbery, and Harden identified himself as the one holding a firearm at the time of the robbery.  (*Id.* p. 25.)  Harden claimed that he did not recall seeing a video of himself holding a firearm in the Botavia retail store, and the United States advised that it had the evidence and could prove that Harden was holding a firearm in the Botavia store if Harden were to go to trial.  (*Id.*)

Harden again confirmed that he wanted to plead guilty, and the Court accepted his plea.  (*Id.* p. 28.)

### *Sentencing*

The Presentence Investigation Report (PSR) grouped Counts 1 and 2 pursuant to U.S.S.G. § 3D1.2(b) and (c).  (Crim. Dkt. 676, ¶ 33.)  After separately calculating each of the five robberies in which Harden pled guilty, the greater of the adjusted offense levels was 28.  (*Id.* ¶ 76.)  Four levels were added pursuant to U.S.S.G. § 3D1.4.  (*Id.* ¶ 77.)  Three levels were subtracted for acceptance of responsibility, providing for a total offense level of 29.  (*Id.* ¶¶ 80-82.)

Harden's criminal history included:

1.  2003 Armed Robbery (Chicago, Illinois) (*Id.* 676, ¶ 85.)

2.  2011 Felon in Possession of a Weapon (Chicago, Illinois) (*Id.* ¶ 87.)

Coupled with Harden's criminal history category of III, the PSR found his guideline range was 108 to 135 months' imprisonment. (*Id.* ¶ 128.) The maximum statutory term of imprisonment for each count was a term of 20 years, pursuant to 18 U.S.C. § 1951(a) and 18 U.S.C. § 924(o). (*Id.* ¶ 127.) Pursuant to 18 U.S.C. § 3663A, the total amount of restitution for the victims of the robberies in which Harden pled guilty was found to be $190,898.67. (*Id.* ¶¶ 25, 141.) Harden filed no objections to the report.

Harden's sentencing hearing was held on November 28, 2017. (Crim. Dkt. 687.) The Court asked Harden whether he had an opportunity to review the PSR, and whether he had any objections or changes, and Harden's only objection was to paragraph 25 of the PSR, which included Harden in the August 14, 2015 Aurora, Illinois retail store robbery, and the $33,000 of cell phone equipment stolen during that robbery. (S., pp. 4-12.) After reviewing the factual basis, the Court concluded that Harden did not admit to the Aurora robbery, and granted Harden's objection to remove that robbery from the PSR. (*Id.* p. 14.) The Court then accepted the PSR for the record as would be amended, and requested the probation officer to revise the PSR to eliminate the Aurora robbery when it goes to the Bureau of prisons.[2] (*Id.* pp. 15-16.)

---

[2] On December 1, 2017, the Probation Officer filed a corrected PSR under seal, eliminating the Aurora robbery. (Crim. Dkt. 695.)

After confirming that Harden was involved in at least four robberies, the Court went on to review Harden's sentencing guideline calculation. (*Id.* p. 16.) The Court found the base offense level for each robbery was 20. (*Id.* pp. 16-18.) Five levels were added to each robbery pursuant to U.S.S.G. § 2B3.1(b)(2)(C) because a firearm was brandished during each robbery. (*Id.*) Two additional levels were added to each robbery pursuant to U.S.S.G. § 2B3.1(b)(4)(B) because the victims were restrained during each robbery. (*Id.*) Pursuant to U.S.S.G. § 2B3.1(b)(7)(B), the Court added one additional level for the July 28, 2015 robbery because the loss from that robbery was $41,994.99; one additional level to the August 24, 2015 robbery because the loss from this robbery was $64,739.80; one additional level to the September 13, 2015 robbery because the loss from that robbery was $25,429.88; and one additional level to the September 15, 2015 robbery because the loss from that robbery was $25,686.00. (*Id.* pp. 16-17.)

Under the multiple-count adjustment, the Court found the greater of the adjusted offense levels is 28. (*Id.* p. 18.) After a four-point enhancement pursuant to U.S.S.G. § 3D1.4, the Court found the combined adjusted offense level is 32. (*Id.*) After applying an additional three-level reduction for acceptance of responsibility, the Court determined that Harden's total offense level is 29. (*Id.*)

The Court also reviewed Harden's criminal history. (*Id.*) The Court

9

noted that Harden committed an armed robbery in Illinois when he was 17 years old. (*Id.* p. 18-19)  On May 5, 2015, Harden was sentenced to eight years' imprisonment in the Illinois Department of Corrections for this crime, which warrants three criminal history points. (*Id.* p. 19.)  The Court also noted that Harden was convicted of felon in possession of a weapon in Illinois on August 24, 2012, and that conviction warrants an additional three criminal history points. (*Id.*)  With a total criminal history score of six points, the Court determined that established a criminal history category of III, resulting in a sentencing guideline range of 108 to 135 months' imprisonment. (*Id.*)  Harden did not object to the calculation of his criminal history score or sentencing guideline range.

Thereafter, trial counsel reminded the Court of Harden's cooperation with the government. (*Id.* pp. 22-23.)  The government agreed that Harden provided significant cooperation, but there was also a significant amount of criminal conduct that was unable to be charged because of challenges related to venue. (*Id.*, pp. 25-26.)  The government also informed that Court that the Rule 11(c)(1)(C) plea agreement took into consideration Harden's cooperation with the government, as well as his criminal history.[3]  (*Id.* pp. 25-26.)  The

---

[3] The government noted that at the time of the parties' plea agreement, the United States believed that Harden's criminal history score was lower. (*Id.* 26.)

10

government's bargain did not include a § 5K motion because the government waived its argument for an upward variance. (*Id*. pp. 25-28.)

The Court sentenced Harden to a term of 115 months' imprisonment on each count, to be served concurrently. (*Id*. p. 29.)  The Court also ordered $157,850.67 restitution, to be paid as follows:  $25,429.88 to T-Mobile Wireless in Orland Park, Illinois; $25,686.00 to i-Wireless in Waterloo, Iowa; $41,994.99 to Verizon Wireless in Lexington, Kentucky; and $64,739.80 to Sprint Mobile in Batavia, Illinois. (*Id.*)  Because this case involved other defendants, the Court ordered that each defendant be held jointly and severally liable for payment of the restitution. (*Id*. pp. 29-30.)

The Court informed Harden that he had the right to appeal. (*Id*. p. 35.) The Court advised that, with few exceptions, any notice of appeal must be filed within 14 days after the written judgment is entered on the docket. (*Id*.) Harden confirmed that he understood. (*Id*. p. 36.)

After the sentencing hearing adjourned, Harden spoke with trial counsel before he was taken from the room by the Marshals. (*See* Affidavit of Larry Simon, Exhibit A.)  At that time, trial counsel told Harden that the sentence that he received was five months less than the sentence recommendation that trial counsel had previously negotiated with the government. (*Id*. p. 2.)  During this conversation, Harden told trial counsel

that he did not want to pursue an appeal of the sentence that was imposed. (*Id*.)

At no time did Harden ever direct Simon to file an appeal of his judgment of conviction or sentence.  (*Id*., p. 3.)

### *Harden's 28 U.S.C. § 2255 Motion*

On December 19, 2018, Harden filed a motion pursuant to § 2255, claiming: 1) his attorney was ineffective for failing to file a notice of appeal; 2) trial counsel was ineffective for failing to investigate a prior offense that he committed when he was a juvenile, and, had he done so, that prior offense would not have be found to be a crime of violence supporting a 5-level enhancement in his sentencing guideline calculation; 3) trial counsel was ineffective for failing to investigate and advocate against the amount and structure of restitution; and 4) trial counsel was ineffective for failing to investigate and advocate for a downward adjustment or for the government to file a § 5K1.1 motion for a downward departure.  (Dkt. 1.)

Simon signed a declaration, attached as Exhibit A, refuting Harden's first claim.  (*See* attached Exhibit A.)  Instead, "Harden did not direct [Simon] to file an appeal of his judgment and conviction or of his sentence."  (*Id*.)

## DISCUSSION

## 28 U.S.C. § 2255 STANDARD OF REVIEW

A motion pursuant to § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). To obtain relief under § 2255, Harden must show that his sentence violates the Constitution or laws of the United States, the court was without jurisdiction to impose the sentence, the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). "Hence, relief is appropriate only for 'an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)).

Section 2255 relief "is an extraordinary remedy." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). The reason is straightforward: "because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Id.* Harden already received full process here; and, as discussed below, he cannot meet his burden to show he is entitled to "an extraordinary remedy." *Id.*

## I. Harden's Counsel Was Not Constitutionally Ineffective

To prevail on a claim of ineffective assistance of counsel, Harden must demonstrate (1) that his counsel's performance fell below an objective standard of reasonableness, and (2) caused his prejudice. *Strickland v.*

13

*Washington*, 466 U.S. 668, 687-88 (1984).  In evaluating whether counsel's performance was deficient, the court must defer to counsel's tactical decisions, avoid "the distorting effects of hindsight" and give counsel the benefit of a strong presumption of reasonableness.  *Strickland*, 466 U.S. at 689.

In order to satisfy the prejudice component, Harden must "affirmatively prove prejudice" by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 693-94.  It is not enough for a petitioner to show that "the errors had some conceivable effect on the outcome of the proceeding."  *Id*. at 693.  A petitioner must specifically explain how the outcome would have been different absent counsel's ineffective assistance.  *Berkey v. United States*, 318 F.3d 768, 773 (7th Cir. 2003).  A reasonable probability is one "sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694; *Cullen v. Pinholster,* 563 U.S. 170, 189 (2011).

If Harden fails to prove either *Strickland* prong, the court need not address the remaining one.  *Morales v. Johnson*, 659 F.3d 588, 600 (7th Cir. 2011).

As an initial matter, Harden is only objecting to his attorney's performance at the sentencing hearing.  (Dkt. 1.)  He does not seek to withdraw from his guilty plea.  (*Id*.)  Thus, as he has requested, his sole

14

remedy would be a new sentencing hearing.  (*Id.*)  For the reasons discussed

below, however, he is not entitled to even that.

### A. Harden Did Not Instruct Trial Counsel To File A Notice Of Appeal; Thus His Claim Fails

Harden's first ground requesting relief in his § 2255 petition reads, in

full, as follows:

> Trial counsel rendered ineffective assistance in not carrying
> out Petitioner's desire that a notice of appeal be timely filed.
>
> Prior to sentencing, Petitioner and Trial Counsel discussed
> that one benefit of Petitioner  withdrawing from the plea
> agreement (which Petitioner did do) would be that Petitioner
> would retain all of his direct appeal rights.  But after sentencing,
> Trial Counsel did not discuss filing an appeal with Petitioner,
> and Petitioner's repeated attempts to contact Trial Counsel to
> ensure that an appeal was filed in a timely manner were
> fruitless, as Trial Counsel either failed to or refused to respond to
> Petitioner's attempts to communicate.
>
> Petitioner always contemplated retaining his direct appeal
> rights so as to be able to appeal adverse sentencing decisions,
> and Trial Counsel was well aware of that.  Nevertheless,
> Trial Counsel did not carry out Petitioner's wishes, and did
> not file the notice of appeal where it was reasonable for
> Trial Counsel to assume that Petitioner wanted to appeal.

(Dkt. 1, p. 5.)

"[A] lawyer who disregards specific instructions from the defendant to

file a notice of appeal acts in a manner that is professionally unreasonable."

*Roe v. Flores–Ortega*, 528 U.S. 470, 476–77 (2000).  In other words, "[w]hen a

defendant asks his attorney to pursue a direct appeal and the attorney does

not do so, it is per se ineffective assistance of counsel," without regard to the probability of success on appeal.  *Gant v. United States*, 627 F.3d 677, 681 (7th Cir. 2010); *Peguero v. United States*, 526 U.S. 23, 28 (1999) ("When counsel fails to file a requested appeal, a defendant is entitled to ... an appeal without showing that his appeal would likely have merit."); *see also Garza v. Idaho*, 586 U.S. __, 139 S. Ct. 738 (2019).

But Simon's declaration refutes Harden's claim.  (Exhibit A, ¶ 8.)   In his affidavit, Simon states that immediately after the sentencing hearing adjourned, Harden told him that he did not want to pursue an appeal of the sentence that was imposed.  (*Id*. ¶ 5.)  Thus, because Harden never requested a notice of appeal to be filed, his claim does not fall under *Flores–Ortega*.

Further, the record shows that Harden was fully aware of his right to appeal when he told Simon not to appeal.  The record shows that Harden was advised many times of his right to file a notice of appeal, and Simon discussed these rights with him.  First, in the plea agreement which Harden withdrew at the change of plea hearing, Harden acknowledged his right to file a notice of appeal.  (Dkt. 234, ¶¶ 22, 23.)  Harden also agreed that Simon advised him of his appeal rights:

> J.    My attorney has informed me, and I understand, that I
> have the right to appeal any conviction and sentence that I receive,
> unless I have waived my right to appeal as part of this Plea
> Agreement.  If I have not waived my right to appeal, I understand
> that I must file a Notice of Appeal within fourteen (14) days of

16

the entry of the judgment in this case; I further understand that the Clerk of the Court will prepare and file a Notice of Appeal on my behalf if I ask that to be done.  I also understand that the United States has the right to appeal any sentence that I receive under this Plea Agreement.

(*Id.*, ¶ 28J.)

Also, at the change of plea hearing, Simon advised the Court that he informed Harden of the ramifications of pleading guilty without the benefit of a plea agreement, and that certain protections and limitations that were included in a written plea agreement would no longer apply.  (P. 3.) At that time, the Court also informed Harden that he had the right to appeal the Court's conviction and sentence imposed.  (*Id.* pp. 16, 17.)

At the sentencing hearing, the Court again informed Harden that he had the right to appeal his judgment of conviction.  (S. 35.)  The Court then explained the applicable time limitations.  (*Id.*)  Not only does the record support that Harden was aware of his rights to file an appeal, but the record also reflects that trial counsel advised Harden of these rights.

Simon's sworn affidavit also addresses Harden's other allegations related to his alleged failure to file a notice of appeal.  Simon says that he reviewed numerous letters that were sent and received between the parties during the two year period that he represented Harden, and this review revealed that Harden's first contact with trial counsel after the November 28, 2017 sentencing hearing was a handwritten letter dated April 13, 2018 (and

17

postmarked April 16, 2018).  Harden's judgment of conviction become final on December 5, 2017.  (Dkt. 700.)  Accordingly, Harden's had until on or before December 19, 2017 in which to file a notice of appeal.  Not only did Simon testify that Harden never asked him to file a notice of appeal, but Harden's first written correspondence with trial counsel was almost four months after his deadline to file a notice of appeal.

Simon also testified that he rarely spoke with Mr. Harden telephonically while Harden was lodged in a jail facility.  (*Id*. p. ¶ 7.)  Simon confirmed that during the course of his criminal case, he received numerous phone calls and phone messages from individuals that identified themselves as Harden's girlfriend and his step-father.  (*Id*.)  However, neither of these individuals nor Harden either called or left a message at Simon's office between the date of the sentencing hearing and the date when Mr. Harden's April, 2019 letter was received.  (*Id*.)  As such, Simon was also not telephonically notified that Harden wished to file a notice of appeal.

### B. Harden Fails To Show That Trial Counsel's Performance Was Ineffective Where A Five-Level Increase To Harden's Base Offense Level Was Properly Applied

Harden's second ground requesting relief in his §2255 petition reads, in its entirety, as follows:

> Trial counsel rendered ineffective assistance in failing to investigate and advocate against a determination that a prior offense was a crime of violence.

> Four days before Petitioner's sentencing, the PSR was modified to provide for a 5-level enhancement of his Guidelines base offense level because a prior offense committed when a juvenile was deemed a crime of violence.  Had Trial Counsel investigated and advocated competently, the prior offense would not have been found to be a crime of violence supporting the 5-level enhancement.
>
> Had he properly investigated and advocated, Trial Counsel would have been reasonably likely to secure a lower Guidelines level and a lower sentence for Petitioner.

(Dkt. 1, p. 6.)

### 1. Deficiency

Harden fails to carry his burden.  He claims Simon should have investigated further.  (*Id.*)  But "a petitioner alleging that counsel's ineffectiveness was centered on a supposed failure to investigate has the burden of providing the court sufficiency precise information that is, a comprehensive showing as to what the investigation would have produced." *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003) (citing *United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1133 (7th Cir. 1990)) (internal quotations omitted).  Harden has made no showing what an investigation would have produced; much less a "comprehensive showing." *Id.*  Thus, he cannot show deficient performance.

In all events, the five-level enhancement was correct.  Harden appears to be confused about the five-level enhancement that he received pursuant to U.S.S.G. § 2B3.1(b)(2)(C) because firearms were brandished during the robberies of his current conviction, and the calculation of his criminal history score.  Regardless, trial counsel was not deficient, and Harden's argument has no merit.

If Harden is complaining about the five-level enhancement he received pursuant to U.S.S.G. § 2B3.1(b)(2)(C), trial counsel was not deficient for failing to investigate or allocate against this enhancement.   (See (Crim. Dkt. 676, ¶¶ 36, 44, 52, 60 and 68 for application of the five-level enhancement for each of the robberies.))   Section 2B3.1(b)(2)(C) provides for a five-level enhancement when a firearm is brandished during a robbery.  (*Id.*)  Harden pled guilty to conspiracy to commit robbery and brandishing a firearm during a crime of violence to four robberies.  (P. 20-22; 28.)   Harden admitted to his role in each of these robberies, and admitted that a firearm was brandished during each of these robberies.  (Id.)  Harden cannot go back on that now.

The enhancement was properly applied.   And, "[w]hen the claim of ineffective assistance is based on counsel's failure to present a motion . . . [courts] have required that a defendant prove the motion was meritorious." *United States v Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005) (citing *Owens v. United States*, 387 F.3d 607, 610 (7th Cir. 2004); *United States v. Stewart*,

388 F.3d 1079, 1084 (7th Cir. 2004)).  This objection would not have been successful.

If, on the other hand, Harden is complaining that his criminal history score, Harden's criminal score was properly calculated.   Harden's criminal history score was correctly determined to be six points.  Harden's 2003 juvenile armed robbery conviction warranted the three points it received. (Crim. Dkt. 676, ¶ 85.)  U.S.S.G. § 4A1.1(a) (2016) provides in relevant part:

> Add **3** points for each prior sentence of imprisonment exceeding one year and one month.

(*Id*.)

The commentary to § 4A1.1(a) also addresses prior convictions for an offense committed prior to the defendant's eighteenth birthday:

> A sentence imposed for an offense committed prior to the defendant's eighteenth birthday is counted under this subsection only if it resulted from an adult conviction. S*ee* §4A1.2(d).

(*Id*.)

Section 4A1.2(d) provides:

> (d) OFFENSES COMMITTED PRIOR TO AGE EIGHTEEN (1) If the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add **3** points under §4A1.1(a) for each such sentence.

(*Id*.)

Thus, under § 4A1.1(a), prior sentences are counted when a defendant committed the crime prior to his or her eighteenth birthday, but was sentenced as an adult.  (*Id*.)  The PSR reflects that Harden was born in August, 1986 and was arrested for armed robbery in December, 2003 when he was 17 years old.  (Crim. Dkt. 676, p. 3; ¶ 85.)  Harden was not convicted and sentenced for the 2003 armed robbery offense until May 2005, when he was 19 years old, at which time he received a sentence of 8 years' confinement in the Illinois Department of Corrections.  (Crim. Dkt. 676, ¶ 85.)  Harden was an adult when he was convicted and sentenced, and his term of imprisonment exceeded a term of one year and one month as required by § 4A1.1(a) of the guidelines.  (*Id*.)

Thus, any argument would have failed.  Thus, Simon was not deficient for failing to raise it.  *Cieslowski*, 410 F.3d at 360.

### 2.  Prejudice

For the reasons discussed above, Harden also cannot show prejudice. The arguments he wishes his attorney would have made would have been futile.  In other words, they would not have changed his sentence.

### C. Harden Fails To Show That Trial Counsel Was Ineffective When the Amount and Structure of Restitution Was Properly Ordered By The Court

Harden's third ground requesting relief in his § 2255 petition reads, in full, as follows:

22

> Trial counsel rendered ineffective assistance in failing to investigate and advocate against the amount and structure of restitution.
>
> Petitioner was held to be jointly and severally liable for $157,850. However, the amount overstated the amount of harm done to each victim, and apportioned liability to Petitioner for offenses in which his role was overstated. Petitioner's liability should have been limited to a proportional share. Had Trial Counsel properly investigated and advocated for an adjustment of the restitution, Petitioner would not have been directed to pay the amount or on the terms ordered in the judgment.

(Dkt. 1, p. 7.)

### 1. Deficiency

Harden fails to carry his burden. Again, he claims Simon should have investigated further. (*Id.*) But to make such a showing in this context, he "has the burden of providing the court sufficiency precise information that is, a comprehensive showing as to what the investigation would have produced." *Hardamon*, 319 F.3d at 951 (citing *Gramley*, 915 F.2d at 1133) (internal quotations omitted). Harden has made no showing what an investigation would have produced; much less a "comprehensive showing." *Id.* The government and Court are thus left to speculate why Harden thinks the restitution is incorrect or what the correct restitution amount should be. That is wholly insufficient to carry a § 2255 burden. Harden's claim fails.

In all events, the record clearly shows that the restitution was correct. The Court ordered restitution of $157,850.67 pursuant to the Mandatory Restitution for Victims Act (MRVA). 18 U.S.C. § 3663A; U.S.S.G. § 5E1.1. (S. 29.) United States Sentencing Guidelines § 5E1.1 and MRVA requires courts to order defendants, whose offenses meet specified elements, to make restitution payments if they are convicted. 18 U.S.C. § 3663A(a). Harden pled guilty to crimes that triggered restitution under § 3663A. (P. 17-24.)

Harden doesn't appear to be disputing that the Court ordered restitution, but alleges that the amount of restitution ordered by the Court is overstated compared to the harm caused to the victims, as well as his role in the offenses. (Dkt. 1, p. 7.) MRVA requires a Court to order restitution to each of the victims in the full amount of each victim's losses. 18 U.S.C. § 3663(b)(1)(B)(ii).

At the change of plea hearing, Harden agreed that he participated in the July 28, 2015 retail store robbery located at 2901 Richmond Road in Lexington, Kentucky, and $41,994.99 worth of equipment was stolen. (P. 20.) Harden also agreed that he participated in the August 24, 2015 retail store robbery located at 201 North Randall in Batavia, Illinois, and $64,739.80 worth of equipment was stolen; the September 13, 2015 robbery of a retail store located at 25615 Lagrange Road in Orland Park, Illinois, and $25,429.88 worth of equipment was stolen; and the September 15, 2015

24

robbery of a retail store located at 1523 East San Marnan in Waterloo, Iowa, and $25,686.00 worth of equipment was stolen.  (P. 21-22.)  The total amount of each of the victims' loss of stolen equipment equals is $157,850.67.  The court ordered $157,850.67 in restitution.

Thus, the restitution amount was correct.  In total, $157,850.67 of equipment was stolen during the retail robberies in which Harden pled guilty.   Because the Court properly calculated the amount of restitution, trial counsel's performance was not deficient.  *Cieslowski*, 410 F.3d 353, 360

Next, Harden argues that his role in the offenses was overstated, and his liability for restitution should have been limited a proportional share. (Dkt. 1, p. 7.)  Harden further alleges that if trial counsel had investigated and allocated the structure of the restitution, the Court would not have held him jointly and severally liable for the ordered amount of restitution.  (*Id*.)

But that argument is necessarily incorrect.  The Seventh Circuit has held that "co-conspirators are held jointly and severally liable for all foreseeable losses within the scope of their conspiracy regardless of whether a specific loss is attributable to a particular coconspirator."  *United States v. Moeser,* 758 F.3d 793, 797 (7th Cir. 2014) (citing *United States v. Berkowitz,* 732 F.3d 850, 853 (7th Cir. 2013); *United States v. Dokich,* 614 F.3d 314, 318 (7th Cir. 2010); *United States v. Martin,* 195 F.3d 961, 968 (7th Cir. 1999)). In order words, the government did not need to prove "a direct causal

relationship between the defendant's personal conduct and a victim's loss
because MRVA imposes joint liability on *all* defendants for loss caused by
others participating in the scheme." *Id.* (citing *Dokich,* 614 F.3d at 318)
(emphasis added.)   Because the Court properly ordered the correct amount
and structure of restitution, Harden cannot show deficient performance.
*Cieslowski*, 410 F.3d 353, 360

### 2. Prejudice

For the reasons discussed above, Harden cannot show that he suffered
prejudice.  The restitution is correct and would not have been different had
Simon made these unmeritorious objections.

### D. Harden Fails To Show That Trial Counsel Was Ineffective When Trial Counsel Did Not Seek A § 5K1.1 Downward Departure

Harden's fourth ground requesting relief in his 2255 § petition reads, in
full, as follows:

> Trial counsel rendered ineffective assistance in failing
> to investigate and advocate for a downward adjustment
> or for the government to file a §5K1.1 motion for a
> downward departure.
>
> Petitioner debriefed with the government and provided
> substantial assistance in the prosecution of some of the
> remaining co-defendants.  Yet Petitioner received no
> benefit, either in the form of a downward variance or a
> downward departure for this assistance.  Trial Counsel
> had the duty to investigate the nature and extent of the
> cooperation, and to advocate for the government to file an
> appropriate motion pursuant to USSG § 5K1.1 for a

downward departure reflecting the nature and extent of
his cooperation.  Barring the government doing so, Trial
Counsel should have advocated, based on his investigation,
for a downward variance reflecting the value of the
cooperation.

Had he done so, Trial Counsel would have been reasonably
likely to secure a lower Guidelines level and a lower sentence
for Petitioner.

(Dkt. 1, p. 9.)

## 1. Deficiency

Harden, again, claims that his attorney should have investigated
further.  But to make such a showing in this context, he "has the burden of
providing the court sufficiency precise information that is, a comprehensive
showing as to what the investigation would have produced." *Hardamon*, 319
F.3d at 951 (citing *Gramley*, 915 F.2d at 1133) (internal quotations omitted).
Harden has made no showing what an investigation would have produced;
much less a "comprehensive showing." *Id.*

In all events, Harden's claim is based on a misunderstanding of
§ 5K1.1.  A substantial assistance reduction is only available "[u]pon a motion
of the government." *Id.*  The government didn't offer a § 5K1.1 in Harden's
11(c)(1)(C) agreement; and it certainly wasn't going to in an open plea.
Harden's claim must fail because his attorney could not have forced the
government to do something it wasn't inclined to do.

27

Although Harden alleges that trial counsel did not advocate for a downward departure, the record reflects that trial counsel did in fact advise the Court of Harden's substantial cooperation with the government:

> TRIAL COUNSEL:  Lastly, I would be remiss if I did not mention, and I know the Court is aware of this, my client's cooperation with the government during the course of this case.  My client's status of being cooperative with the government began before he was appointed to me or any other lawyer in Iowa, in that he was interviewed by agents there and substantially – well, and he started to talk to them about his involvement and the identities of other people in the case.  And he followed through with that after my appointment, as we talked about before, going back as early as, I believe, the springtime when he got to this district, in being cooperative with Agent Hornback and the prosecutors.  And you, Your Honor, you heard his testimony at trial, in that he was a helpful witness for the government against Kemp and Adkinson, who decided to go to trial.
>
> So obviously, even though there's not a plea agreement that was entered into in this case, my client entered his plea, did it knowingly, he freely admitted to his participation in the robberies that are indicated in the report.

(S., pp. 22-23.)

The government did not dispute the fact that Harden provided substantial assistance and cooperation, and recommended a 120 term of imprisonment based upon Harden's substantial cooperation and the government not seeking an upward variance in Harden's sentence:

> MR. SHEPARD:  [Harden] testified, he cooperated first, He put himself at risk by testifying.  And the Court – you

28

Know, said it best.  You can evaluate it.  You don't need me to
rehash it, you saw it.  And the Court is also aware of the types
of individuals that Mr. Kemp and Mr. Adkinson are.  They're
pretty violent, being the directors of what was a very
violent conspiracy that the Court has stated multiple times
terrorized people.  So he did himself at risk.  He did – although
I'm certain he was –

THE COURT:  I am correct there's no 5K?

MR. SHEPARD:  There is no 5K.  There was no 5K for
anyone in this case, Your Honor.  The government gave
specific – the bargain for consideration from the
government to all the cooperators was, we will waive our
argument for an upward variance.

THE COURT:  Okay.

MR. SHEPARD:  And as the Court knows, although you
never gave me one, I asked for an upward variance on
everyone other than Mr. Kemp and Mr. Adkinson, because
life was in their guidelines.  I couldn't go up.
So we still believe 120 months is an appropriate sentence.
I think it adequately balances the criminal conduct that
was committed by the defendant with his, I'll freely admit,
substantial cooperation.  And that cooperation, in small part,
resulted in two people who were significantly worse than this
defendant being taken off the streets for a long, long, time.
And, I mean, he earned it, and the Court should consider it.
Thank you.

(CITE—what page?)

   In the end,  Simon could not have forced the government to offer a

§ 5K1.1.  That is fatal to his claim.

## 2. Prejudice

29

Because Simon could not force the government to offer a § 5K1.1, Harden cannot show prejudice here.  His claim must fail.

Furthermore, Harden withdraw of his plea agreement worked to his benefit.  Due in part to Simon's advocacy at the sentencing hearing, Harden secured a term imprisonment that was five months lower than the government's recommendation.  Harden has not and cannot show that he suffered any prejudice as a result of his attorney's performance.

## II.    No Evidentiary Hearing Is Warranted

"It is well-established that a district court need not grant an evidentiary hearing in all § 2255 cases."  *Martin v. United States*, 789 F.3d 703, 706 (7th Cir. 2015).  Such a hearing is not required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255; *see also Menzer v. United States*, 200 F.3d 1000, 1006 (7th Cir. 2000).  Nor is a hearing required if the petitioner makes allegations that are "vague, conclusory, or palpably incredible," rather than "detailed and specific."  *Martin*, 789 F.3d at 706 (citing *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006) (internal quotations omitted).

Instead, a district court need only grant an evidentiary hearing if the petitioner "alleges facts that, if proven, would entitle him to relief."  *Id.* (internal quotations omitted).  But, to be sure, "allow[ing] indiscriminate hearings in federal post-conviction proceedings would eliminate the chief

30

virtues of the justice system-speed, economy, and finality." *Menzer*, 200 F.3d at 1006.

Harden's latter three claims come nowhere close to warranting an evidentiary hearing.

As to Harden's first claim, regarding the notice of appeal, when it is the petitioner's word versus his attorney's word, the Seventh Circuit has held that an evidentiary hearing is necessary to determine whether the petitioner requested his attorney to file a notice of appeal. *Gonzalez-Olvera v. United States,* 2018 WL 2244708, at *4 (C.D. Ill. May 16, 2018). In *Gonzalez-Olvera,* the petitioner pled guilty and did not waive his right to appeal his conviction and sentence. *Id.* Trial counsel also filed an affidavit with the Court and testified that the petitioner did not request trial counsel to file a notice of appeal. *Id.* *Gonzalez-Olvera* held "in cases with similar facts, the Seventh Circuit has held that an evidentiary hearing is required to resolve this claim." *Id.* (citing *Heiss v. United States*, 24 F.App'x 599, 600–01 (7th Cir. 2001) (district court committed reversible error when it dismissed a similar claim in a § 2255 Motion without holding an evidentiary hearing); *Bradley v. United States*, 219 F. App'x 587, 589 (7th Cir. 2007) (district court abused its discretion by refusing to hold an evidentiary hearing on claim that counsel failed to file requested notice of appeal); *Dowell v. United States*, 694 F.3d

898, 903–04 (7th Cir. 2012) (remanding to district court to determine factual question of whether defendant asked his counsel to file a notice of appeal*); see also Blake v. United States*, 814 F.3d 851, 852–53 (7th Cir. 2016) (affirming district court's finding that Mr. Blake did not ask his attorney to file an appeal after it held an evidentiary hearing on the claim).

That is the state of the law in the Seventh Circuit.  The government notes it continued disagreement with that to preserve an objection.  A member of the bar of this Court filed a sworn declaration that Harden did not request an appeal be filed.  That should suffice to ward off an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, Harden's § 2255 motion should be denied.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney

By:   s/ Bradley P. Shepard
      Bradley P. Shepard
      Assistant United States Attorney
      Office of the United States Attorney
      10 W. Market St., Suite 2100
      Indianapolis, Indiana 46204-3048
      Telephone: (317) 226-6333
      Fax: (317) 226-6125
      E-mail: Bradley.Shepard@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2019, a copy of the foregoing Response in Opposition to Section 2255 Motion was filed electronically.  I further certify that on July 29, 2019, a copy of the foregoing was mailed, by first-class U.S. Mail, postage prepaid and properly addressed to the following:

James Harden
Reg. No. 14293-029
Williamsburg FCI
P.O. Box 340
Salters, SC 29590

s/ Bradley P. Shepard
Bradley P. Shepard
Assistant United States Attorney